**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| BCS Insurance Company , | ) | Civil Action No:  3:12-cv-00933-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **COMPLAINT** |
| | ) | |
| Big Thyme Enterprises, Inc.; David A. Crotts | ) | |
| & Associates, Inc.; and David A. Crotts, | ) | |
| | ) | |
| Defendants. | ) | |

BCS Insurance Company ("BCSI") alleges as follows:

I.    **NATURE OF THIS ACTION**

1.    This matter seeks a declaratory judgment regarding the rights and obligations under a professional liability policy, Policy No. AEO-29392, effective August 1, 2011 to August 1, 2012, issued by BCSI to David Crotts ("Crotts") (the "BCSI Policy") with respect to the allegations in *Big Thyme Enterprises, Inc. individually and as the representative of a class of similarly-situated persons, v. David A. Crotts & Associates, Inc., David A. Crotts, and John Does 1-10*, Case No. 2011-CP-4007666 pending in the United States District Court, District of South Carolina, Columbia Division, Case No. 3:12-cv-00822-JFA.  This case was originally filed in Court of Common Pleas of the Fifth Judicial District of the State of South Carolina, Richland County (the "Underlying Lawsuit").  The BCSI Policy is attached hereto as Exhibit 1, and incorporated by reference herein.  The Underlying Lawsuit was filed on November 10, 2011, by Big Thyme Enterprises, Inc. ("Big Thyme") individually and as the representative of a class of similarly-situated persons against David A. Crotts & Associates, Inc. ("Crotts & Associates"), David A. Crotts, ("Crotts") and several Doe Defendants (collectively, the "Crotts Defendants").

A true and correct copy of the underlying complaint ("Complaint") is attached hereto as Exhibit 2.

## II.    PARTIES

2.    Plaintiff BCSI is an insurance company and a corporation organized under the laws of the State of Ohio, with its principal place of business in Illinois.  BCSI issued a professional liability policy that covers Crotts for his liability resulting from covered "Wrongful Acts" in rendering or failing to render "Professional Services" in his capacity as a licensed insurance agent and Crotts & Associates for its vicarious liability resulting solely from covered "Wrongful Acts" of Crotts.

3.    Upon information and belief, Defendant Big Thyme Enterprises, Inc. ("Big Thyme"), the claimant in the underlying case, is a South Carolina corporation with its principal place of business in Columbia, South Carolina.

4.    Upon information and belief, Defendant Crotts & Associates is a South Carolina corporation with its principal place of business in Greenwood, South Carolina.

5.    Upon information and belief, Defendant Crotts is a citizen of South Carolina and an officer, director, shareholder, and control person of Crotts & Associates.

## III.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of all claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because BCSI is an Ohio corporation with its principal place of business in Illinois.  Defendant Big Thyme is a South Carolina corporation and, upon information and belief, maintains its principal place of business in South Carolina.  Defendant Crotts & Associates is a South Carolina corporation with its principal place of business in South

Carolina, and, upon information and belief, Defendant Crotts is a citizen of South Carolina. The amount in controversy herein exceeds the sum of $75,000, exclusive of costs and interest.

7.    Venue for this civil action is properly laid in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims for relief asserted herein occurred in this judicial district.

## IV.    BCSI'S ACTION FOR DECLARATORY RELIEF

8.    This is an action by BCSI for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57, Federal Rules of Civil Procedure, seeking an adjudication of the rights and obligations of the parties under an insurance policy issued by BCSI.

9.    There is an actual substantial and justiciable controversy between the parties concerning the rights and duties of the parties with respect to insurance coverage for the below-mentioned claims, including, but not limited to, the obligation of BCSI to defend and/or indemnify the Crotts Defendants in the Underlying Case under the BCSI Policy.

10.    A judicial determination is necessary and appropriate at this time so that the parties may ascertain their present and/or future obligations.

## V.    GENERAL ALLEGATIONS

### A.    The Underlying Complaint

11.    In the Underlying Lawsuit, Big Thyme alleges that the Crotts Defendants transmitted four, unsolicited, facsimiles to Big Thyme on February 15, 2010, March 15, 2010, April 15, 2010, and June 21, 2010, respectively.  (Ex. 2, ¶ 13).

12.    In Count I of the Complaint, Big Thyme alleges that the faxes constitute "unsolicited advertisements," as defined by the Telephone Consumer Protection Act, 47 USC § 227 ("TCPA"), and that the Crotts Defendants are liable for a minimum amount of $500 per

violation, should be enjoined from continuing to engage in the statutory violations, and should pay the Big Thyme's costs.  (See Ex. 2, ¶¶ 20-33).

13.    In Count II of the Complaint, Big Thyme alleges conversion against the Crotts Defendants for wrongfully misappropriating paper, fax machines, toner, and employee time, and seeks appropriate damages and costs.  (See Ex. 2, ¶¶ 34-45).

14.    The class action allegations of the Complaint state that, upon information and belief, the class that Big Thyme represents consists of forty or more similarly situated persons. (Ex. 2, ¶ 22(a)).

**B.    The Agents Errors and Omissions Policy Issued by BCSI to the Crotts Defendants**

**1.    Scope of Coverage**

15.    The Crotts Defendants are Insureds under the BCSI Policy.  The BCSI Policy affords agents errors and omissions liability insurance on a claims made and reported basis, subject to a $1,000,000 per claim limit of liability.

16.    The BCSI Policy has a policy period of August 1, 2011 to August 1, 2012.  (Ex. 1 at 1).

17.    The BCSI Policy provides, in part:

SECTION I

COVERAGE

The Company shall pay on behalf of an Insured Loss and Defense Expenses resulting from any Claim first made against an Insured and reported to the Company during the Policy Period, or Extended Reporting Period, if applicable, in excess of the applicable deductible and within the limit of liability specified in the Declarations.

* * *

SECTION IV

DEFINITIONS

Whenever used in this Policy:

a)      "Claim" shall mean any written notice received by an Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act involving Professional Services.

* * *

b)      "Client" shall mean an individual or business who is a member of the general public and uses the Professional Services of the Insured.  Client shall not include an Individual Agent, an employee of an Individual Agent or any current or former owners, partners, shareholders or directors of an Individual Agent or Insured.

* * *

g)      "Insured" shall mean:

    1.      an Individual Agent;

* * *

    4.      the agency under which the Individual Agent is doing business or is employed, but only for such agency's vicarious liability resulting solely from Wrongful Acts of the Individual Agent otherwise covered under this Policy, and not due to any actual or alleged independent Wrongful Acts of the agency.  Notwithstanding the foregoing, owners, partners, shareholders or directors of the agency are not Insureds under this Policy unless such coverage arises independently, as an Individual Agent, under this Policy.

* * *

j)      "Professional Services" shall mean specialized services rendered to a Client as a licensed Life, Accident and Health Insurance Agent, a licensed Life, Accident and Health Insurance General Agent, a licensed Life, Accident and Health Insurance Broker or as a registered representative in the sale or servicing of mutual funds through a NASD registered broker/dealer organization.  Professional Services shall not include: (1) the surrender, conversion or alteration of a Life, Accident or Health Insurance product in order to invest in anything other than a Life, Health or Accident insurance product, or (2) any advice or recommendation to in any way convert, redeem or alter a Life, Accident or Health Insurance product in order to invest in anything other than a Life, Health or Accident Insurance product.

* * *

l)      "Wrongful Act" shall mean any actual or alleged negligent act, error or omission in the rendering of or failure to render Professional Services by an Insured to or for a Client, solely in his or her capacity as a licensed Life, Accident and Health Insurance Agent, a licensed Life, Accident and Health Insurance General Agent or a licensed Life, Accident and health Insurance Broker.

(Ex. 1, §§ I, IV)

## 2.    Acts Expressly Excluded

18.    The scope of coverage under the BCSI Policy has limitations.  The BCSI Policy specifically does not apply to:

SECTION V

EXCLUSIONS

The Company shall not pay Loss or Defense Expenses resulting from any Claim based upon, arising out of, directly or indirectly resulting from or in consequence of:

a)      any dishonest, fraudulent, criminal or malicious act, or assault or battery committed by or contributed to by the Insured or Insureds;

* * *

c)      Injury to or destruction of any property, including the Loss of use thereof;

* * *

(Ex. 1, § V(a), (c)).

## 3.    The Amendatory Endorsement Regarding the Definition of "Loss"

19.    The BCSI Policy also contains an amendatory endorsement that amends the definition of "Loss" as applied to Insureds in South Carolina:

AMENDATORY ENDORSEMENT – SOUTH CAROLINA

* * *

The Section entitled Section IV. DEFINITIONS is amended as follows:

The definition of "Loss" is deleted in its entirety and replaced with the following:

"Loss" shall mean such amounts that the Insured is legally obligated to pay, including settlements or judgments, resulting from Claims up to the Policy limits. Loss shall not include:

1. civil or criminal fines or penalties,
2. the portion of any multiplied damage award which exceeds the amount multiplied,
3. return or withdrawal of commission, fees or other consideration paid to an Insured,
4. costs and expenses resulting from compliance with any injunctive or non-monetary relief or agreement to provide such relief;
5. matters deemed uninsurable under applicable law.

(Ex. 1, Amendatory Endorsement – South Carolina).

**C.    BCSI is Providing the Crotts Defendants With a Defense**

20.    On November 16, 2011, the Crotts Defendants tendered the Underlying Lawsuit to BCSI.

21.    On November 17, 2011, BCSI acknowledged receipt of the Underlying Lawsuit, and on December 14, 2011, BCSI agreed to defend the Crotts Defendants under a reservation of rights.

**VI.    CLAIM FOR DECLARATORY JUDGMENT**

22.    BCSI incorporates and realleges Paragraphs 1 through 21 above as if fully set forth herein.

23.    BCSI seeks a declaration that the Underlying Lawsuit is not covered by the BCSI Policy for a number of reasons. Each is set forth as a separate sub-section.

**A.    The Underlying Lawsuit Does Not Fall Within the BCSI Policy's Definition of "Professional Services"**

24.    The BCSI Policy provides coverage for a Claim first made against an Insured and reported to BCSI during the Policy Period, and a "Claim" is defined as "any written notice received by an Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act involving Professional Services."  (Ex. 1, §§ I, IV(a)).  "Professional Services"

means "specialized services rendered to a Client as a licensed Life, Accident and Health Insurance Agent, a licensed Life, Accident and Health Insurance General Agent, a licensed Life, Accident and Health Insurance Broker . . . ." (Ex. 1, § IV(j)).

25.     The alleged conduct of the Crotts Defendants described in the Complaint involves the solicitation of business by advertising and marketing directed to Big Thyme and members of the general public with whom the Crotts Defendants had no established business relationship. Thus, the conduct alleged in the Complaint does not involve any agency or brokerage relationship under which the Crotts Defendants could be rendering services to a "Client as a licensed Life, Accident and Health Insurance Agent"; accordingly coverage for the Underlying Lawsuit is outside the scope of coverage of the BCSI Policy.

26.     Furthermore, the act of solicitation of business by advertising and marketing does not constitute rendering or failing to render specialized services because it requires no specialized knowledge inherent to the insurance profession.

**B.     The Dishonest Acts Exclusion**

27.     The BCSI Policy does not apply to any claim arising out of "any dishonest, fraudulent, criminal or malicious act, or assault or battery committed by or contributed to by the Insured, or Insureds." (Ex. 1, § V(a))

28.     Because the TCPA deems the conduct alleged in the Complaint as unlawful and dishonest, this exclusion would apply, and coverage for the Underlying Suit is precluded under the BCSI Policy.

**C.     The Destruction of Property Exclusion**

29.     The BCSI Policy does not apply to any Claim based upon, arising out of, directly or indirectly resulting from or in consequence of "Injury to or destruction of any property, including the Loss of use thereof." (Ex. 1, § V(c)).

30.     Because the violations of the TCPA alleged in the Complaint involved the loss of the recipients' time, energy and ability to use their telephone equipment, this exclusion would apply and coverage for the Underlying Suit is precluded under the BCSI Policy.

**D.     Certain Claimed Relief is Not Covered by the BCSI Policy Definition of "Loss"**

31.     The BCSI Policy definition of "Loss" provides that coverage under the BCSI Policy does not include "civil or criminal fines or penalties."  (Ex. 1, Amendatory Endorsement – South Carolina).

32.     The Underlying Complaint seeks statutory penalties, *i.e.* $500.00 per unsolicited fax solicitation.  Such relief does not fall within the BCSI Policy definition of "Loss" and falls outside the scope of coverage afforded by the BCSI Policy.

33.     The BCSI Policy definition of "Loss" excludes "the portion of any multiplied damages award which exceeds the amount multiplied."

34.     To the extent the Underlying Complaint seeks treble damages for willful violation of the TCPA, such amounts do not constitute covered "Loss."

35.     To the extent that the Underlying Suit may be within the coverage of the BCSI Policy, which it is not, such forms of relief are outside the scope of coverage of the BCSI Policy.

WHEREFORE, BCS Insurance Company prays that judgment be entered in its favor and against Defendants as follows:

A.     Declaring that the Underlying Lawsuit is outside the coverage afforded by the BCSI Policy for any and all of the above referenced reasons, and that BCSI has no duty to defend or indemnify the Defendants in connection therewith;

B.     Declaring that any statutory penalties awarded to Big Thyme or the class it represents in the Underlying Lawsuit are excluded by the BCSI Policy for any and all of the

above referenced reasons, and that BCSI has no duty to indemnify the Defendants in connection

therewith;

C.      Declaring that BCSI is entitled to reimbursement from the Defendants of any

defense expenses BCSI pays on the claims in the Underlying Lawsuit that were not potentially

covered under the BCSI Policy, including, but not limited to, defense expenses incurred on the

TCPA claim, and the conversion claim; and

D.      Awarding BCSI such additional relief as shall be deemed appropriate.


Respectfully submitted,


s/Clay Robinson
_____
Clay Robinson (Fed ID #3505)
ROBINSON, MCFADDEN & MOORE, P.C.
Post Office Box 944
Columbia, SC  29202
(803) 779-8900
(803) 744-1546 (facsimile)
Email:  clay@robinsonlaw.com


April 3, 2012                          Attorneys for Plaintiff BCS Insurance Company