IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| BCS Insurance Company, | ) | C/A No.: 3:12-CV-933-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Big Thyme Enterprises, Inc.; David A. Crotts & Associates, Inc.; and David A. Crotts, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| David A. Crotts & Associates, Inc. and David A. Crotts, | ) ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BCS Insurance Company, | ) | |
| | ) | |
| Counter Defendant. | ) ) | |

This matter comes before the court on a motion for summary judgment filed by Plaintiff BCS Insurance Company ("BCS"). All of the Defendants oppose the motion. For the reasons that follow, this court hereby grants the motion for summary judgment.

**I.    Factual and Procedural History**

This declaratory judgment action concerns an insurance policy—specifically, it concerns the Agents and Brokers Professional Liability Policy Number AEO29392 ("the Policy" or "the BCS Policy"), which BCS issued to the Agents of Blue Cross and Blue Shield of South Carolina, effective August 1, 2011 through August 1, 2012. Defendants David A. Crotts and David A. Crotts & Associates, Inc. (collectively, "the Crotts

1

Defendants") are Insureds under the Policy. In addition to being Defendants in the instant case, the Crotts Defendants are also defendants in a state action ("the underlying case") brought by Defendant Big Thyme Enterprises, Inc. ("Big Thyme"). In the underlying case, Big Thyme has alleged that the Crotts Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by sending unsolicited facsimile advertisements. Big Thyme claims that it is entitled to statutory damages of $500 per violation (which can be tripled under the TCPA if the violation was willful or knowing). Additionally, Big Thyme alleges that the Crotts Defendants committed conversion by wrongfully misappropriating its paper, fax machines, toner, and employee time. Though BCS has been providing a defense for the Crotts Defendants in the underlying case, it has done so under a reservation of rights. In this declaratory judgment action, BCS seeks a declaration regarding its rights and obligations under the Policy. Big Thyme has filed a counterclaim asking the court to find that BCS has a duty to continue providing a defense in the underlying case and to indemnify the Crotts Defendants in the event they are found liable.

On October 5, 2012, BCS filed their Motion for Summary Judgment. The Crotts Defendants and Big Thyme filed separate Responses in Opposition on November 5, 2012, and BCS replied to those responses in a single brief on November 16, 2012.

## II.     Legal Standard

### A.     Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

2

The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B.     Insurance Policy Interpretation

To determine an insurance policy's coverage in a declaratory judgment action under South Carolina law, a court should compare the complaint in the underlying action with language of the policy to see whether the complaint alleges any facts that could possibly bring the action within coverage of the policy. *Jefferson-Pilot Fire & Cas. Co. v. Sunbelt Beer Distributors, Inc.*, 839 F. Supp. 376 (D.S.C. 1993). Where a motion for summary judgment presents a question as to the construction of a written contract, the question is one of law if the language employed by the agreement is plain and unambiguous. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 822 (S.C. Ct. App. 1999). Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Cincinnati Ins. Co. v. Urgent Care Pharmacy, Inc.*, 413 F. Supp.2d 644, 647 (D.S.C. 2006). Rules of construction of an insurance policy require clauses of exclusion to be narrowly interpreted and clauses of inclusion to be broadly construed. *Auto-Owners Ins. Co. v.*

*Madison at Part West Prop. Owners Assoc.*, 834 F.Supp.2d 437, 443 (D.S.C. 2011). In interpreting insurance policies, courts should consider constructions of policies that "permit a sensible and reasonable interpretation rather than one that will lead to absurd consequences or unjust results." *In re Georgetown Steel Co., LLC v. Capital City Ins. Co.*, 318 B.R. 313, 321 (D.S.C. 2004).

### III.     Analysis

In summarizing the reasons that it is entitled to summary judgment, BCS offers the following:

> [T]he court need not look past the plain and unambiguous BCS policy language to conclude that the Crotts Defendants are not entitled to coverage because: (1) the underlying case does not allege that the Crotts Defendants rendered or failed to render a "Professional Service" as defined in the Policy and as understood by well settled law; (2) Big Thyme is not a "Client" of [the] Crotts [Defendants;] and (3) the statutory penalties sought by Big Thyme do not constitute "Loss." Likewise, Big Thyme's conversion claim is an expressly excluded form of "property damage." In addition, the affirmative defenses alleged by Big Thyme do not create coverage for the Crotts Defendants where it does not exist under the Policy.

(ECF No. 48-1, p. 2). The Defendants disagree that any of these reasons entitles BCS to summary judgment.

### A.     "Professional Service"

The policy at issue in this case is a professional liability policy, which does not provide coverage for property damage or advertising injury, as opposed to a commercial general liability policy, which does provide such coverage. Specifically, the BCS Policy covers "Loss and Defense Expenses resulting from any Claim . . . ." Claim is defined to include "any notice received by an Insured that any person or entity intends to hold such Insured responsible for a Wrongful Act involving Professional Services." Wrongful Act

4

is defined to mean "any actual or alleged negligent act, error or omission in the rendering or failure to render Professional Services by an Insured to or for a Client, solely in his or her capacity as a licensed Life . . . Insurance Agent . . . ."  Finally, Professional Services are defined as "specialized services rendered to a Client as a licensed Life, Accident and Health Insurance Agent."

BCS contends that the Professional Services covered by the BCS Policy do not include the activities alleged in the underlying case.  "There is simply nothing about unsolicited faxed advertising to non-clients that calls upon the Crotts Defendants' specialized knowledge or training as an insurance agent or agency." (ECF No. 48-1, p. 10).  As examples of activities that would constitute Professional Services of an Insurance Agent, BCS lists the following: meeting with clients to discuss their insurance needs; counseling clients on the products best suited to such needs; obtaining competing bids from insurance companies; completing insurance applications with clients; procuring coverage; and renewing, cancelling, or consulting about premium charges.  Simply put, BCS does not believe that sending unsolicited advertising faxes constitutes Professional Services under the Policy, and there is nothing in the TCPA to suggest that that sort of conduct is related to professional services generally.

The Crotts Defendants and Big Thyme take different approaches in their responses to this argument by BCS.  The Crotts Defendants argue that advertising is an integral component of an insurance agent's livelihood—they must be able to inform the public of their services in order to continue business.  Additionally, the Crotts Defendants argue that sending facsimile advertisements is more than merely an administrative act, requiring no specialized knowledge or skill—it requires the professional to design and/or approve

an advertisement that complies with laws and rules governing his or her profession and further to determine how to best disseminate the information the targeted audience.  Big Thyme, on the other hand, states that to trigger coverage under the Policy, "the Claim [must] be for a Wrongful Act 'involving' Professional Services," and, in this case, there is a substantial nexus between the unsolicited facsimiles and the specialized professional services of an insurance agent or broker.

The court agrees with BCS that based on the language of the Policy, there is no coverage for the facsimiles sent by the Crotts Defendants to Big Thyme, as the act of sending unsolicited faxes does not qualify as "specialized services rendered to a Client as a licensed Life, Accident and Health Insurance Agent."  The court is well-aware that "where the words of an insurance policy are capable of two reasonable interpretations, the court will adopt the construction most favorable to the insured." *Standard Pacific v. Amerisure Ins. Co.*, 2012 WL 6604614 at *3 (4th Cir. Dec. 19, 2012).  The court sees no ambiguity here.  The Policy covers Wrongful Acts, which are defined as "any actual or alleged negligent act, error or omission in the rendering or failure to render Professional Services by an Insured to or for a Client, solely in his or her capacity as a licensed Life . . . . Insurance Agent . . . ."  The court finds that sending unsolicited faxes to potential clients is neither the rendering nor the failure to render Professional Services under the language of the Policy.  Thus, there is no coverage for the acts alleged in the underlying case.

**B.     "Client"**

As previously recited, the definitions of both Wrongful Act and Professional Services require that the Professional Services be rendered to a Client in order for the BCS Policy to provide coverage.  The BCS Policy defines a Client as "an individual or

business who is a member of the general public and uses the Professional Services of the Insured."

Here, BCS's argument is very straightforward. Neither Big Thyme nor any members of the putative class is a client as that term is used in common parlance, nor are they "Clients" as that term is defined in the BCS Policy.

Big Thyme encourages the court to broadly construe the term Client to include Big Thyme and members of the putative class. The Crotts Defendants, on the other hand, assert that a reasonable construction of the term Client includes "a member of the general public who is harmed by some act undertaken by Crotts in connection with their business as an insurance agent or broker, where the injured party at any time (past, present, or future) could 'use' Crotts' services." (ECF No. 53, p. 14).

Even if the sending of unsolicited faxes was considered a Professional Service under the language of the Policy, such Professional Services would not have been rendered to a client, as Big Thyme was clearly not a client of the Crotts Defendants. The interpretation of "Client" suggested by Big Thyme to include potential future clients reads the language of the Policy to an absurd result.

### C.     "Property Damage"

The BCS Policy excludes "[i]njury to or the destruction of any property, including the Loss or use thereof." According to BCS, Big Thyme's conversion claim is plainly excluded based on this specific Policy language, and BCS should be granted summary judgment on that claim.

7

The Crotts Defendants submit that the lost employee time for which Big Thyme seeks to recover through its conversion claim does not fall under the property damage exclusion.

According to BCS, if this court were to accept Crotts' argument that "employee time" is not "property," then the loss of "employee time" cannot be a basis upon which the conversion claim was or could be based. If, on the other hand, lost "employee time" is "property," then this basis for damages too is not covered, and no obligation to defend or indemnify is created. Either way, summary judgment should be granted in favor of BCS on the conversion claim. The court fully agrees with this analysis offered by BCS.

## IV. Conclusion

Because the court finds summary judgment appropriate on the foregoing bases, the court need not address the other issues raised by the parties in their briefs. As there is no coverage under the Policy for the claims in the underlying case, the court hereby grants summary judgment in favor of BCS on its claims and against Big Thyme on its counterclaims.

IT IS SO ORDERED.

February 14, 2013  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

8